**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**

**UNITED STATES OF AMERICA**

**V.** **NO. 4:25-CR-123**

**CORLEONE PATE, JR.**

# OPINION AND ORDER

A federal jury convicted Corleone Pate, Jr., of Hobbs Act robbery of a Dollar General store and brandishing a firearm during the robbery. Pate moved for a judgment of acquittal then moved for a new trial, challenging not only the evidence's sufficiency but maintaining that the Court erred by replacing one juror, not allowing his witnesses to testify, and redacting the copy of the Indictment provided to the jury, among other things. Because Pate failed to brief his motion for judgment of acquittal, and because all his grounds for a new trial and/or judgment of acquittal are without merit, the motions will be denied.

## I
## Procedural History

On July 23, 2025, a federal grand jury returned a two-count Indictment against Corleone Pate, Jr. Doc. #1. Count One charged Pate with unlawfully obstructing, delaying, and affecting commerce in violation of 18 U.S.C. § 2 and § 1951(a) ("Hobbs Act") by robbing the Dollar General Store at 35218 Highway 430 in Coila, Mississippi, by actual and threatened use of force; and Count Two charged him with knowingly and intentionally using, carrying, and brandishing a firearm during and in relation to the crime of violence charged in Count One, in violation of 18 U.S.C. § 924(c)(1). *Id.* at PageID 1, 2.

Pate proceeded to trial by jury on both counts on April 20, 2026. Doc. #58. After the government rested, Pate made an oral motion for a judgment of acquittal, which the Court denied.

*Id*. Pate rested without presenting evidence, after which the government finally rested. *Id.* The jury began deliberating on April 24. *Id*. After deliberations began, the jury sent notes to the Court. Docs. #78, #79. Based on certain messages relayed in the notes, the Court, after consulting with counsel, questioned each juror regarding potential juror misconduct, after which one juror was removed and replaced with an alternate. Doc. #58. Both before and after the removal and replacement of the juror, Pate made oral motions for mistrial, which the Court denied. *Id*. On April 28, the jury returned a verdict finding Pate guilty on both counts of the Indictment, and specifically found that Pate brandished a firearm when committing the Count Two offense. Doc. #68.

On May 7, 2026, Pate filed a written motion for a judgment of acquittal. Doc. #65. The next day, Pate filed a motion for a new trial. Doc. #66. The government responded to both motions on May 18.[1] Docs. #69, #70. On June 3, Pate filed untimely replies in support of both his post-trial motions.[2] Docs. #76, #77.

## II
## Motion for Acquittal

In his post-trial motion for acquittal, Pate lists as grounds to set aside the jury verdict that "[t]he verdict contradicts the evidence;" "[t]he verdict lacks substantial evidence;" "[c]hain-of-

---

[1] Two days later, though no judgment has been entered since Pate has not yet been sentenced, Pate filed a notice of appeal "from a judgment of conviction for Hobbs Act armed robbery entered in this action on the 8th day of May 2026." Doc. #71 at PageID 269. Despite the notice of appeal, this Court has jurisdiction to rule on Pate's motions for a judgment of acquittal and for a new trial. "A notice of appeal filed after the [district] court announces a decision, sentence, or order—but before it disposes of [a motion for judgment of acquittal under Rule 29, a new trial under Rule 33, or arrest of judgment under Rule 34]—becomes effective upon the later of the following: (i) the entry of the order disposing of the last such remaining motion; or (ii) the entry of the judgment of conviction." FED. R. APP. P. 4(b)(3)(B). Pate is set to be sentenced September 9, 2026, Doc. #81, after which the Court will enter the judgment of conviction.

[2] Pate's reply deadline was May 25. *See* L.U. CRIM. R. 47(D) (setting reply deadline as five calendar days after service of response); FED. R. CRIM. P. 45(a)(1)(C) (extending period that ends on weekend until next day that is not a weekend or holiday). Pate neither requested nor was granted an extension to reply. The Court declines to consider Pate's untimely replies.

custody paperwork is missing;" "[t]he Court wrongly denied [his] Motion for Mistrial and Motion to Dismiss the Indictment;" "[t]he indictment was modified before being given to the jury;" "[t]he Court failed to grant a 'simple continuance' … preventing [him] from presenting witnesses;" "[t]he exception of unavailability was not allowed for witness presentation in other forms;" "Juror #11 was improperly removed;" "[t]he foreman was not removed despite failure to follow instructions and indicating juror counts in notes;" and "[t]he Court interfered with the jury and should have declared a hung jury after 5 jury notes where at least the first 2 were improper." Doc. #65 at PageID 226–27 (emphases omitted).

The government responds that "the evidence presented at trial supports the jury's verdict;" "the Court properly denied the defendant's motion for mistrial and motion to dismiss the Indictment;" "the Court's amendment of the Indictment was proper;" "the Court did not err in denying a continuance;" and "the Court properly resolved the issue of juror misconduct." Doc. #69 at 2, 4, 5, 6, 8 (capitalization altered) (emphases omitted).

**A. Federal Rule of Criminal Procedure 29(a)**

Motions for acquittal are governed by Federal Rule of Criminal Procedure 29(a), which provides that "[a]fter the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." "Evidence is sufficient to support a conviction so long as 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Gas Pipe, Inc.*, 997 F.3d 231, 240 (5th Cir. 2021) (quoting *United States v. Scott*, 892 F.3d 791, 797 (5th Cir. 2018)). In applying this standard, "the court 'views all evidence, whether circumstantial or direct, in the light most favorable to the government, with all reasonable inferences and credibility choices to be made in support of the jury's verdict.'"

*Id.* (quoting *United States v. Bolton*, 908 F.3d 75, 89 (5th Cir. 2018)).

**B. Waiver and Abandonment**

Pate's two-page motion for a judgment of acquittal merely lists the grounds specified above, without any explanation, argument, or citations to legal authority. *See generally* Doc. #65. Pate's failure to brief any of these grounds constitutes his waiver and abandonment of them, and the motion is properly denied for this reason alone. *See United States v. Charleston*, No. 25-60639, 2026 WL 2033177, at *1 (5th Cir. July 14, 2026) (per curiam) ("arguments are deemed abandoned due to inadequate briefing"); *United States v. Reagan*, 596 F.3d 251, 254–55 (5th Cir. 2010) ("failure to brief … constitute[d] waiver" where defendant, "who [was] represented by appointed counsel, [did] nothing beyond listing … points of error").

**C. Merits**

Even had Pate not waived and abandoned all his grounds for acquittal by failing to brief them, the motion for acquittal fails on the merits.

**1. Grounds unrelated to sufficiency of evidence**

"[I]nsufficiency of the evidence is the only basis for a Rule 29 motion for judgment of acquittal[.]" 2A WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 466 (4th ed. 2026); *see United States v. Zamora-Salazar*, 860 F.3d 826, 831 (5th Cir. 2017) ("Moving for a judgment of acquittal is considered to be a challenge to the sufficiency of the evidence."). So, the grounds Pate lists in his motion for judgment of acquittal which do not concern the sufficiency of the evidence—including Pate's bald assertions that the Court erred by denying his motions to dismiss and for mistrial, modifying the Indictment, denying a continuance, not allowing his witnesses to testify in another manner, removing Juror 11, not removing the foreperson, and interfering with the jury—are all rejected as improper grounds for a Rule 29 motion.

### 2. Sufficiency of evidence grounds

Turning to Pate's grounds for acquittal that relate to the sufficiency of the evidence, Pate submits that a judgment of acquittal is warranted because "[t]he verdict contradicts the evidence, with no proof supporting testimony; DNA evidence was not provided to the Game Warden, and mapping inconsistencies exist;" "[t]he verdict lacks substantial evidence; the Government's expert acknowledged possible taint;" and "[c]hain-of-custody paperwork is missing, suggesting alteration." Doc. #65 at PageID 226. The government responds that "[it] presented evidence of the crimes charged … through direct and circumstantial evidence." Doc. #69 at 3.

"[A Hobbs Act] violation requires (1) robbery, extortion, or an attempt or conspiracy to rob or extort (2) that affects interstate commerce." *United States v. Jackson*, 88 F.4th 596, 600 (5th Cir. 2023). "To trigger the Hobbs Act, a business's activities need have only a slight effect on interstate commerce." *Id.* "Similarly, a crime's impact on interstate commerce need only be minimal." *Id.*

18 U.S.C. § 924(c)(1)(A)(i) provides that "any person who, during and in relation to any crime of violence … uses or carries a firearm … shall, in addition to the punishment provided for such crime of violence … be sentenced to a term of imprisonment of not less than 5 years." But "if the firearm is brandished," such person shall "be sentenced to a term of imprisonment of not less than 7 years." 18 U.S.C. § 924(c)(1)(A)(ii). "'[B]randish' means, with respect to a firearm, to display all or part of the firearm, or otherwise make the presence of the firearm known to another person, in order to intimidate that person[.]" *Id.* at § 924(c)(4). Hobbs Act robbery qualifies as a predicate crime of violence under § 924(c). *United States v. Bowens*, 907 F.3d 347, 353–54 (5th Cir. 2018).

At trial, the jury first heard testimony from Keith Conner, a state trooper with the

Mississippi Highway Patrol, who responded to a report of a robbery at the Dollar General Store in Coila, Mississippi, and observed an individual running from the store holding what he knew from his experience and training to be a firearm.

Dollar General employee Shureen Granderson next testified that the robber pointed a firearm at her and demanded the money from the register and the safe, that she was scared, and that she gave the money to the robber. Granderson also testified that the Dollar General receives products from out of state and that the store was temporarily closed following the robbery. Surveillance video of the robbery, which depicted the masked robber holding what appeared to be a firearm, was admitted into evidence and shown to the jury.

Ronald Brown, an employee of Clark Beverage Group who witnessed the robbery, testified that the robber had a firearm and that Clark Beverage Group distributes products to the Dollar General from out of state.

Sheriff Clint Walker testified about him and other officers finding near the store currency, clothing (consistent with the robber's clothing in the video), and "a receipt of some type of tally, the amount of money."

Game Warden Derrick Scott testified that he apprehended Pate on his property around three miles from the Dollar General, and that Pate was wearing boots and pants (the description of which was consistent with those worn by the robber in the video).

Adam Eubanks testified that he brought to the crime lab the clothing evidence from the robbery which was stored at the Carroll County Sheriff's Department.

DNA expert Nathan Holly testified that DNA on the clothing found near the Dollar General was consistent with Pate's known DNA sample.

Finally, Investigator Banks Tucker testified that while responding to the robbery, he

encountered a vehicle parked at an abandoned store near the Dollar General; the individual in the vehicle was receiving a call from a person with a nickname known to be used by Pate—"June;" and there were documents with Pate's name on them inside the vehicle. Tucker also testified that when he arrived at the location where Pate was apprehended—two-and-a-half to three miles from the Dollar General—there were gray sweatpants and boots on the ground, Pate was not wearing any pants or shoes, and in the pocket of the sweatpants was a phone with a number that matched the contact named "June," and currency matching the denominations and amounts on the Dollar General "money slip."

Viewing this evidence in the light most favorable to the verdict, a reasonable juror could find that Pate robbed the Dollar General, and that he brandished a firearm while doing so. There is also sufficient evidence that the robbery affected interstate commerce. *See United States v. Weldon*, No. 21-30474, 2022 WL 4363831, at *2 (5th Cir. Sep. 21, 2022) (per curiam) (effect on interstate commerce established because "goods sold at each business … were manufactured outside Louisiana and thus required interstate commerce to arrive at the robbed stores [in New Orleans]" and "robbery caused at least a minimal interruption in commerce"); *United States v. Martinez*, 28 F.3d 444, 445 (5th Cir. 1994) (robberies obstructed interstate commerce because "establishments sold products which were manufactured out-of-state" and "robberies … caused the temporary closure of … the businesses").

Pate's contention that there was "no proof supporting testimony"[3] is patently without merit, as there were multiple pieces of evidence presented, including video footage, photographs, and clothing. *See generally* Doc. #60. To the extent Pate argues certain pieces of physical evidence were tainted and raises chain-of-custody issues, his counsel made the same arguments at trial, and

[3] Doc. #65 at PageID 266.

the jury presumably took such into account when weighing the evidence. Courts "may not reweigh the evidence or substitute the jury's reasonable factual inferences for [their] own." *Waganfeald v. Gusman*, 674 F.3d 475, 480 (5th Cir. 2012).

Because there was sufficient evidence for a reasonable juror to find Pate guilty on both counts, all sufficiency-of-the evidence bases in his motion for acquittal are denied on the merits.

## III
## Motion for New Trial

Pate submits that a new trial is warranted because "Juror #11 should not have been removed from the jury;" he "was denied the opportunity to present witnesses;" and the "removal of language from the statute and [the] Indictment violate his 5th Amendment rights." Doc. #66 at PageID 230, 231, 233 (emphases omitted). The government responds that "the Court properly resolved the issue of juror misconduct;" "the Court did not err in denying a continuance;" and "the Court's amendment of the Indictment was proper." Doc. #70 at 2, 4, 6 (emphases omitted).

### A. Federal Rule of Criminal Procedure 33(a)

Motions for new trials are governed by Federal Rule of Criminal Procedure 33(a). Under Rule 33(a), a "court may vacate any judgment and grant a new trial if the interest of justice so requires." "Broadly speaking, Rule 33 is exercised in two situations. One is when error infects the trial—perhaps the erroneous admission or exclusion of evidence, inflammatory comments by a lawyer, or faulty jury instructions. The other is when the court believes the evidence weighs 'heavily against the verdict.'" *United States v. Crittenden*, 46 F.4th 292, 296 (5th Cir. 2022) (internal citations omitted) (quoting *United States v. Robertson*, 110 F.3d 1113, 1118 (5th Cir. 1997)). "[A]ny error of sufficient magnitude to require reversal on appeal is an adequate ground for granting a new trial." *United States v. Wall*, 389 F.3d 457, 474 (5th Cir. 2004) (quoting WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 556 (3d ed. 2004)).

## B. Removal of Juror 11

Pate argues that "Juror #11 should never have been removed from the jury" because "Juror #11 was measuring whether a universal standard of professionalism/ (amount of present or absent evidence) was met by the government concerning what was shown to Juror #11 in court." Doc. #66 at PageID 230.

The government responds that "[c]onsidering the jury's notes and the responses during the Court's inquiry of the panel, … this Court had sufficient reason to conclude that Juror 11 had demonstrated an inability, if not unwillingness, to abide by the Court's instructions;" and "[the] Court did not need to pry into the 'deliberative process' to find that Juror 11 was no longer capable of performing his duty." Doc. #70 at 4.

On the first day of jury deliberations, the Court received a note from the jury which said, "If we cannot reach an unamious decision on a verdict …. what is next in the process?"[4] Doc. #79 at PageID 307 (spelling and grammatical errors in original). After consultation with counsel, the Court instructed the jury to continue deliberations and excused the jury for the weekend.

The next day of deliberations, the Court received another jury note ("Note Four"), which said, "Juror has stated today that they are 'Biased towards the unprofessionalism of the investigation.' this is hindering the groups decision on coming to an unamious decision. How do we procede?" *Id.* at PageID 308 (spelling and grammatical errors in original). After consultation with counsel, the Court responded, "As the Court previously instructed you, do not let any bias influence your decision in any way. It is your duty to base your verdict solely upon the evidence, or lack thereof, without prejudice or sympathy." *Id.* at PageID 309. Later that day, the Court received another jury note ("Note Five"), which stated, "As to the Judge's Response the said

[4] The Court received two prior notes from the jury room, Doc. #78, which it did not consider because the notes did not comply with the Court's instructions.

'Juror' his bias is still influencing their decision." *Id*. at PageID 310.

At that point, the Court determined that an investigation of potential juror misconduct was warranted. After hearing and considering arguments and proposed questions from the government and the defense, the Court questioned each juror outside the presence of the other jurors, proceeding in numerical order, generally using the following language:

> For this questioning, I instruct you do not say how you voted, may vote or will vote on the questions posed on the verdict form. Do not say how another juror has voted, may vote or will vote on the questions posed on the verdict form. Do not state the substance of any jury deliberations. Do not state how the jury may be divided about the case. Do not point out any specific item of evidence. Do not refer to any juror by name, only by that juror's number. And do not discuss my questions or your answers with your fellow jurors or in any way communicate my questions or answers to your fellow jurors. Do you agree to that?
>
> 1. I want to ask you first about juror note number four. Juror note four says "juror has stated today that they are 'biased towards the unprofessionalism of the investigation.' This is hindering the group's decision on coming to a unanimous decision. How do we proceed?" And it's signed by the foreperson. Do you agree with what this note says?
> 2. Now I want to read you juror note number five. "As to the Judge's response, the said 'juror,' his bias is still influencing their decision." Do you agree with what this note says?
> 3. Have you followed the Court's instructions to the jury?
> 4. Are there any jurors who are refusing to follow the Court's instructions?
> 5. Are there any jurors who are refusing to deliberate using the Court's instructions?
> 6. Are there any jurors who are considering matters other than what was presented in the courtroom during the trial?
> 7. Is the bias mentioned in jury notes four and five based on the evidence presented at trial or things not presented at trial?
> 8. Are all jurors able to continue deliberations based on the Court's instructions and follow the law?

All but Juror 11 agreed with the contents of Note Four and Note Five, and Juror 11 agreed that he was biased towards professionalism and standards. All jurors said they had followed the Court's instructions; nine jurors stated that Juror 11 was refusing to follow instructions; five jurors stated that Juror 11 was refusing to deliberate using the Court's instructions; eight jurors reported

that Juror 11 was considering matters other than what was presented during trial; and nine jurors indicated the bias referenced in the jury notes was based on things not presented at trial (with the remaining three jurors answering that the bias was based on both evidence not presented at trial as well as evidence presented at trial). Based on the jurors' responses, the Court determined that Juror 11 was unable or unwilling to follow its instructions because he was considering matters outside of what was presented at trial and allowing bias to influence his deliberations.[5] Juror 11 was removed and replaced with an alternate.

"District courts have discretion to dismiss jurors for just cause." *United States v. Ebron*, 683 F.3d 105, 126 (5th Cir. 2012) (quoting *United States v. Edwards*, 303 F.3d 606, 631 (5th Cir. 2002)). "A juror's inability to follow instructions is a legally valid basis for dismissal." *Id.* at 127 (citing *Edwards*, 303 F.3d at 631). "While the scope of an investigation into juror misconduct is within the discretion of the district court, the applicable authority requires that there be an investigation." *United States v. Ramos*, 801 F. App'x 216, 221 (5th Cir. 2020). "[S]uch an investigation may be conducted via careful juror questioning or any other appropriate means." *Id.* (quoting *Ebron*, 683 F.3d at 125).

The Court's method of investigating juror misconduct was proper. *See United States v. Patel*, 485 F. App'x 702, 712–13 (5th Cir. 2012) (approving investigation method when after receiving note reporting juror misconduct, court allowed parties to review and research the law on issues raised in the note, heard argument, decided to pose five questions to each juror, and solicited proposed language for such questions from the parties). And the Court had good cause to remove Juror 11 because, based on all the jurors' responses, it reasonably concluded that Juror 11 was

[5] The Court had specifically instructed the jurors to "base your verdict solely on the evidence and testimony at trial and not on any outside or online material or source," and "not [to] let any bias, sympathy, or prejudice that you may feel toward one side or the other influence your decision in any way." Doc. #63 at PageID 208–09.

unable or unwilling to follow its instructions.

### C. Defense Witnesses

#### 1. Porter and Hampton

Pate argues that "[t]he government stated 3 days" are necessary for trial; he had "two elderly witnesses[] journey 2 hours;" "[t]he Court terminated trial early on … April 23, 2026, at about 2:00 pm;" "[t]he court informed [him] that it would consider alternative methods of testimony;" "the Court denied the option for the witnesses to testify because they were actually served and were not present;" and "[t]he testimony of the defense witnesses was essential in contesting the Warden's assertions, specifically to: (1) demonstrate that witness Porter owns property adjacent to his land …; (2) corroborate that the defendant was observed on said land by Game Warden Scott; and (3) expose that Game Warden Scott inaccurately claimed he never attempted to acquire Porter's property." Doc. #66 at PageID 231–32.

The government responds that "[t]he appearance of the witnesses was not secured through subpoenas prior to trial or through multiple days of trial," "[t]he anticipated testimony would not have provided substantial favorable evidence," "[a]nd insufficient evidence was brought forth that either witness was available or willing to testify." Doc. #70 at 6.

The afternoon of April 22, defense counsel informed the Court that defense witnesses Pat Porter and Leonard Hampton were present that day but would not be available the next day. During the Court's conference with counsel, defense counsel proposed postponing the rest of the trial until the witnesses could be available or allowing the witnesses to testify by live video.

To the extent Pate argues that the Court should have continued the trial based on Porter and Hampton's unavailability, "[w]hen a continuance is requested based on the unavailability of a witness, the party seeking a continuance must demonstrate: (1) that due diligence was exercised to

obtain the attendance of the witness; (2) that the witness would tender substantial favorable evidence; (3) that the witness will be available and willing to testify; and (4) that denial of the continuance would materially prejudice the movant." *United States v. Hickerson*, 489 F.3d 742, 745 (5th Cir. 2007). "The required prejudice must be severe or serious." *Id*.

According to defense counsel, they first subpoenaed Porter and Hampton the evening of April 22, approximately three days after trial began. Pate cannot show that due diligence was exercised to obtain the attendance of Porter and Hampton, especially when Pate never provided to the Court any proof that any such subpoenas were served on them. *See id.* ("We have previously considered the failure to issue a subpoena to a witness to be decisive as to the due diligence factor[.]"); *United States v. Rodriguez*, 15 F.3d 408, 411 (5th Cir. 1994) (upholding denial of continuance when defendant "had nearly four weeks in which to secure [witness'] attendance" but "waited until two weeks before trial to request the subpoena"). And Pate did not demonstrate that Porter and Hampton would tender substantially favorable evidence and did not attempt to provide an offer of proof as to the specific details of what their testimony would have been. The Court does not see how the dispute over ownership of Scott's property, and the question of whether Pate was found on Porter's or Scott's property, were relevant to any issue in this case. For the same reason, Pate cannot show that he was severely or seriously prejudiced by the Court's refusal to continue the trial to allow Porter and Hampton to testify. So, the Court did not err in denying the request to continue trial.

To the extent Pate argues that the Court erred in not allowing Porter and Hampton to testify by an alternative method, such as by video, Pate cites no authority requiring a court to allow witnesses in a criminal trial to testify by video, and the Court is aware of no such authority. Federal Rule of Criminal Procedure 26 provides that "in every trial the testimony of witnesses must be

taken in open court, unless otherwise provided by a statute or by rules adopted under 28 U.S.C. §§ 2072-2077."[6] The absence of such a provision in the Federal Rules of Criminal Procedure, coupled with the "importance of in-court proceedings … in the context of a criminal trial," *United States v. Navarro*, 169 F.3d 228, 239 (5th Cir. 1999), convinces the Court that even if video testimony is permissible in a criminal trial, it is at least strongly disfavored. Accordingly, the Court did not err in not allowing Porter and Hampton to testify by video.

**2. Vania Pate and Corleone Pate, Sr.**

Pate argues that "Vania Pate held relevant information concerning the possession of the vehicle;" and "Corleone Pate, Sr., who was arrested during the investigation, was able to testify regarding the location where his son was picked up … and provide testimony regarding clothing [he] was wearing upon arrest or other significant rebuttal points." Doc. #66 at PageID 232.

Before opening statements, the parties invoked Federal Rule of Evidence 615. Rule 615 provides that "[a]t a party's request, the court must order witnesses excluded from the courtroom so that they cannot hear other witnesses' testimony." FED. R. EVID. 615(a). In violation of Rule 615, though the Court instructed counsel for the parties to assist in ensuring that any witnesses were not present in the courtroom during trial before they were called, both Vania Pate and Corleone Pate, Sr. (Pate's parents) were present in the courtroom during portions of the trial when other witnesses were testifying. Because refusing to allow a witness to testify is a reasonable sanction for violating Rule 615, *Miller v. Universal City Studios, Inc.*, 650 F.2d 1365, 1373 (5th Cir. 1981), the Court did not err in excluding Vania Pate and Corleone Pate, Sr.'s testimony.

---

[6] "[I]n 2002, the United States Supreme Court rejected a proposed revision to Rule 26 which would have allowed trial testimony via two-way videoconferencing, *see Order of the Supreme Court of the United States*, 207 F.R.D. 89, 93–96 (2002), and, to date, Congress has not acted independently to override the Court's decision. Thus, despite provisions for the use of videoconference technology in other stages of criminal proceedings, neither the Criminal Rules nor federal law generally permits videoconference testimony at trial." *United States v. Banki*, No. 10 Cr. 08, 2010 WL 1063453, at *1 (S.D.N.Y. Mar. 23, 2010).

### D. Redaction of Indictment

Pate argues that the "aided and abetted" language should not have been stricken from the Indictment because "'aided and abetted' is an element of the charge[, and r]emoving such language removes the burden for the government procured the grand jury indictment under and how the defendant was 'aided and abetted' must be proven under 18 U.S.C. § 1951 Hobbs Act as written;" and the "Court did not proceed with the alternative phrasing in Pate's Hobbs Act undisturbed [because i]t deleted 'extortion' entirely." Doc. #66 at PageID 234 (emphasis omitted).

The government responds that "[t]he Court's amendment of the indictment was proper" because it "did not expose [Pate] to the possibility of being tried or convicted on any charge other than that returned by the grand jury." Doc. #70 at 7.

Count One of the Indictment states:

> On or about January 19, 2023, in the Northern District of Mississippi, the defendant, CORLEONE PATE, JR., aided and abetted by those known and unknown to the Grand Jury, did unlawfully obstruct, delay, and affect commerce, by robbing the Dollar General Store, located at 35218 HWY 430, Coila, Mississippi, a business then engaged in interstate commerce, in that the defendant did unlawfully take and obtain a sum of United States currency by actual force and the threatened use of force.
>
> All in violation of Title 18, United States Code, Sections 2 and 1951(a).

Doc. #1 at PageID 1 (emphasis omitted). During the charging conference, *at defense counsel's request*, defense counsel and the government agreed to the redaction of certain language from the Indictment. Based on that agreement, the copy of the Indictment provided to the jury redacted from Count One the language "aided and abetted by those known and unknown to the Grand Jury" and the reference to 18 U.S.C. § 2.

The language redacted from the Indictment was surplusage which did not add an element to the charge. *See United States v. Thompson*, 990 F.2d 625, at *2 (5th Cir. 1993) (indictment language specifying defendants were "aided and abetted by each other" was surplusage because

"the words 'aided and abetted by' … do not in themselves 'add an offense to the indictment, nor do they limit the charge.'") (quoting *United States v. Pearson*, 667 F.2d 12, 14 (5th Cir. Unit B 1982)). "[S]urplusage can be deleted from an indictment so long as the indictment still charges an offense which was originally contemplated by the indictment as returned." *United States v. Ramirez*, 670 F.2d 27, 29 (5th Cir. 1982) (collecting cases). Because the redacted copy of the Indictment given to the jury still charged Pate with all the elements of Hobbs Act robbery in Count One,[7] the Court did not err by redacting the "aided and abetted" language from the Indictment, particularly since Pate requested such. And Pate's assertion that the Court deleted "extortion" from the Indictment is without merit, since the word "extortion" was not in the original Indictment.

### E. Summary

Because all Pate's assertions of error are meritless, his motion for a new trial will be denied.

## IV
## Conclusion

Pate's motion for judgment of acquittal [65] and motion for new trial [66] are **DENIED**.

**SO ORDERED**, this 21st day of August, 2026.

**/s/Debra M. Brown**
**UNITED STATES DISTRICT JUDGE**

[7] The elements of a Hobbs Act robbery are "(1) robbery … (2) that affects interstate commerce." *Jackson*, 88 F.4th at 600. "'[R]obbery' means the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force[.]" 18 U.S.C. § 1951(b)(1).